O

# United States District Court
# Central District of California

| | |
|---|---|
| EDMOND ALVAREZ et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAFELITE GROUP, INC. et al., <br><br> Defendants. | Case № 2:21-cv-07874-ODW (ASx) <br><br> **ORDER DENYING MOTION TO REMAND [14]** |

## I. INTRODUCTION

Plaintiffs Edmond Alvarez and Thomas Newell move to remand this action to state court. (Mot. Remand ("Motion" or "Mot."), ECF No. 14.) For the reasons discussed below, the Court **DENIES** the Motion.[1]

## II. BACKGROUND

Plaintiffs initiated this putative class action in Los Angeles County Superior Court against Plaintiffs' former employer, Safelite Group, Inc., Safelite Fulfillment, Inc., and Safelite Glass Corporation (together, "Safelite"). (Notice of Removal ("NOR") Ex. 1 ("Complaint" or "Compl.") ¶ 10, ECF No. 1-1.) Plaintiffs seek to represent "[a]ll current and former hourly-paid or non-exempt employees who worked

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

for" Safelite in California any time after June 25, 2017, through a final judgment in this action ("Proposed Class"; "Class Period"). (*Id.* ¶ 16.) Plaintiffs assert ten causes of action, for failure to: (1) pay overtime wages; (2) provide meal period premiums; (3) provide rest period premiums; (4) pay minimum wages; (5) timely pay wages upon separation of employment; (6) timely pay wages during employment; (7) provide accurate wage statements; (8) keep requisite payroll records; (9) reimburse business expenses; and (10) maintain fair business practices. (*Id.* ¶¶ 51–121.) Safelite removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (*See* NOR ¶ 4, ECF No. 1.) Plaintiffs now move to remand. (Mot.)

### III. LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). The provisions of CAFA were designed "specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). CAFA grants federal courts original jurisdiction over class action cases when: (1) the proposed class contains more than 100 members ("numerosity"); (2) minimal diversity exists between the parties (meaning at least one plaintiff and one defendant are from different states); and (3) the amount-in-controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2), (5). To remove, a defendant need only file a notice "containing a short and plain statement of the grounds for removal." *Ibarra*, 775 F.3d at 1197 (quoting 28 U.S.C. § 1446(a)).

### IV. DISCUSSION

Plaintiffs argue that Safelite fails to satisfy CAFA's numerosity and amount-in-controversy requirements because Safelite relies on unreasonable assumptions and fails to submit sufficient summary judgment type evidence. (*See* Mot. 1, 5.)

### A. Number of Class Members

To support CAFA jurisdiction, a putative class must have at least 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). In its Notice of Removal, Safelite asserted that the Proposed Class as Plaintiffs define it contains "approximately 1,765" members, which is well over the 100-member numerosity requirement. (NOR ¶ 14.) Safelite's Senior Payroll Manager, Troy Hannum, submitted declaration testimony that he calculated this figure based on his review of Safelite's employment, payroll, and compensation records, from the beginning of the Class Period until shortly before removal. (*See* Decl. Troy Hannum ("Hannum Decl.") ¶¶ 4–5, 8, ECF No. 1-4; Opp'n 9, ECF No. 24.)

In response to Plaintiffs' Motion, Safelite retained econometrics expert Brendan Burke to review Safelite's business records and calculate the number of class members and amount-in-controversy. (*See* Decl. Brendan P. Burke ("Burke Decl.") ¶¶ 2, 5–6, ECF No. 24-3.) Burke analyzed timekeeping and payroll data to determine the number of Safelite employees that fall within Plaintiffs' class definition. (*Id.* ¶ 7.) To perform this analysis, Burke reviewed individual payroll entries from the Class Period for thousands of employees and excluded any employee who may have been exempt, even if they had been classified as non-exempt as some point during that time. (*Id.*) Based on this conservative analysis, Burke determined "the data contained weekly pay data for 1,686 non-exempt California employees." (*Id.* ¶ 10)

Plaintiffs challenge Burke's methodology as "imperfect," (Reply 5–7, ECF No. 28), but any inaccuracy in Burke's methodology would be in Plaintiffs' favor, as Burke erred on the side of excluding non-exempt employees, rather than including exempt employees, (Burke Decl. ¶ 7). Thus, any error would only reduce the total number of class members. Regardless, with a total of 1,686 putative class members, Safelite would have had to misclassify 1,587 employees for the CAFA numerosity requirement to go unsatisfied. The Court therefore finds that Safelite has sufficiently established the Proposed Class has at least 100 members.

### B. Reasonable Assumptions

Plaintiffs also argue that Safelite's amount-in-controversy calculations are based on speculative and unreasonable assumptions. (Mot. 1, 9–21.)

The first step in determining an amount-in-controversy is to look to the complaint. *Ibarra*, 775 F.3d at 1197. In determining the reasonableness of an assumed violation rate, "the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). When a plaintiff alleges "uniform" violations, a 100% violation rate may be reasonable if "the plaintiff offers no competent evidence in rebuttal." *Id.* at 1188. But when a plaintiff alleges a "pattern and practice" of labor law violations, a 100% violation rate is unreasonable and the assumed violation rate must be lower. *See id.* at 1189. For instance, "courts have found violation rates between 25% to 60% to be reasonable based on 'pattern and practice' allegations." *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (collecting cases); *Castillo v. Trinity Servs. Grp., Inc.*, No. 1:19-cv-01013-DAD (EPGx), 2020 WL 3819415, at *7 (E.D. Cal. July 8, 2020) (same).

Here, Plaintiffs allege a "pattern and practice" of wage and hour violations, as well as Safelite's failure to provide "all required rest and meal periods during the relevant time." (Compl. ¶¶ 29, 31.) Relying on these allegations, Safelite calculated the alleged meal break violations, rest break violations, and wage statement violations each at distinct rates of 25%, 35%, 45%, 55%, and 60%. (*See* Burke Decl. ¶¶ 16–19.) Safelite also calculated the overtime and waiting time violations at both 50% and 100%. (*Id.* ¶¶ 22, 25.) Courts have found these rates to be acceptable based on similar pattern and practice allegations. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% meal period violation rate and a 30% rest period violation rate appropriate when the complaint alleged only that the defendant had a "policy and practice" of meal and rest period violations); *see also Avila*, 432 F. Supp.

3d at 1189 (finding a waiting time violation rate of 40% to be reasonable, as the median of 25% and 60%).

The Court agrees with the many courts that have found violation rates ranging from 25% to 60% reasonable when a plaintiff alleges a "pattern and practice" of violations, as Plaintiffs have in this action. Safelite was entitled to rely on Plaintiffs' allegations to form reasonable assumptions and calculate the amount-in-controversy. Further, as discussed below, applying the most conservative violation rate of 25% to only Plaintiffs' meal and rest break claims satisfies the amount-in-controversy requirement for CAFA, so the Court need not determine whether higher violation rates are reasonable here.

## C. Preponderance of the Evidence

Finally, Plaintiffs contend Safelite failed to support its removal with adequate evidence. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014). But "[e]vidence establishing the amount is required" when the plaintiff or the court contests a defendant's allegation. *Id*. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. The parties may prove the amount-in-controversy by way of declarations, affidavits, or other "summary-judgment type evidence." *Ibarra*, 775 F.3d at 1197 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

When the moving party mounts only a facial challenge, the non-moving party need not produce extensive evidence or precise calculations to meet its burden regarding the amount-in-controversy. *See Elizarraz v. United Rentals, Inc.,* No. CV 19-09533 ODW (JCx), 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019); *see also Ehrman v. Cox Commc'ns, Inc.,* 932 F.3d 1223, 1227–28 (9th Cir. 2019) (holding that a defendant removing pursuant to CAFA is not required to present evidence supporting its

jurisdictional citizenship allegations when the plaintiff asserts only a facial, not factual, challenge).

Here, Plaintiffs argue Safelite failed to provide sufficient competent evidence to support its amount-in-controversy allegations. However, Plaintiffs do not challenge the factual truth of Safelite's jurisdictional allegations, nor do they submit any evidence challenging jurisdiction. Thus, Plaintiffs assert only a facial challenge to Safelite's removal. Accordingly, Safelite must establish the amount-in-controversy by a preponderance of the evidence and may do so with a declaration or affidavit. *See Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011) (citing *Lewis v. Verizon*, 627 F.3d 395, 397 (9th Cir. 2010)) (finding declaration sufficient to meet preponderance burden and noting the defendant need not "provide the business records themselves").

In response to Plaintiffs' Motion, Safelite submits Burke's declaration in which he explains what business records he analyzed and how he determined that the amount-in-controversy exceeds $5 million. (Burke Decl. ¶¶ 5–7; *see* Hannum Decl. ¶¶ 3–9 (authenticating business records sent to Burke for analysis).) Burke reviewed three data sets from the Class Period: (1) timekeeping data (hours worked and recorded by Safelite employees), (2) payroll data (compensation paid for number of hours worked); and (3) employment data (dates of employment and termination, and pay rates). (Burke Decl. ¶ 5.) Regarding meal and rest breaks, Plaintiffs allege that shifts over four hours require at least one rest break, shifts over six hours require at least one meal break, and each missed break entitles Plaintiffs to one additional hour of pay. (*See* Compl. ¶¶ 66, 70, 75, 79.) Therefore, Burke analyzed this data to identify how many shifts, and thus how many hours of pay, Plaintiffs put in issue. From his review, Burke found that non-exempt employees worked 598,250 shifts over six hours and 633,082 shifts over four hours during the Class Period. (Burke Decl. ¶¶ 13–14.)

Burke then calculated an average hourly wage for each of the 1,686 non-exempt employees over the proposed Class Period by dividing each individual's total wages by

their total hours worked. (*Id.* ¶ 15.) For the meal break claim, Burke multiplied the average hourly wage for each individual employee with the number of shifts that person worked over six hours, and then applied a 25% meal break violation rate. (*Id.* ¶¶ 15–16.) Burke applied the same calculation using the same conservative 25% violation rate to the employees who worked shifts over four hours. (*Id.*) From these calculations, he determined that the potential damages for meal break violations totaled $3,047,261, and the potential damages for rest break violations totaled $3,212,878. Therefore, the conservatively estimated potential damages for these two claims alone amount to $6,260,139, and thus satisfy the CAFA amount-in-controversy requirement. Accordingly, the Court need not consider the remaining claims.

As Plaintiffs have only facially challenged Safelite's asserted amount-in-controversy and submit no evidence to contest Safelite's alleged facts, Burke's declaration testimony and Safelite's other supporting declarations are sufficient to establish the amount-in-controversy is satisfied by a preponderance of the evidence. *See Ibarra*, 775 F.3d at 1197; *Ray*, 2011 WL 1790123, at *6. Accordingly, the Court finds Safelite has met its burden for purposes of removal under CAFA.

## V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion to Remand. (ECF No. 14.)

**IT IS SO ORDERED.**

April 15, 2022

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**